**Not for Publication**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br><br>LINDA M. WOJTASZEK,<br><br>        Debtor.<br><br><br>JOHN W. SYWILOK, CHAPTER 7 TRUSTEE,<br><br>        The Trustee,<br><br>v.<br><br>THE CITY OF LINDEN and TTLREO, LLC,<br><br>        Appellees. | Civil Action No. 20-3029<br><br>**OPINION** |

**John Michael Vazquez, U.S.D.J.**

      This matter concerns a bankruptcy court's orders denying motions that sought a surcharge pursuant to 11 U.S.C. § 506(c). Pending before the Court is Trustee John W. Sywilok's appeal of two final orders of the United States Bankruptcy Court, entered by the Honorable John K. Sherwood, U.S.B.J. D.E. 1. The Trustee filed a brief in support of his appeal. D.E. 4. The City of Linden and TTLREO, LLC filed briefs in opposition, D.E. 6, 7, to which the Trustee replied, D.E. 10. The Court reviewed all submissions made in support and opposition of the appeal[1] and

---

[1] The Trustee's Brief will be referred to as "Tr. Br.," D.E. 4, and his Appendix will be referred to as "Pa," D.E. 4-1. The City of Linden's opposition brief will be referred to as "Linden Opp.," D.E.

considered the appeal without oral argument pursuant to Local Civil Rule 78.1(b). For the reasons that follow, the bankruptcy court's orders are affirmed.

## I.    FACTS AND PROCEDURAL HISTORY

Linda M. Wojtaszek ("Debtor") filed a voluntary petition for Chapter 7 bankruptcy on September 20, 2017. B.D.E. 1. Debtor listed as an asset real property located at 113 Gesner Street in Linden, New Jersey (the "Property"), valued at $288,997. *Id.* at 10. There was no mortgage on the Property at the time the petition was filed, and Debtor listed TTLREO as holding a claim secured by the property for $58,000. *Id.* at 19. The City of Linden ("Linden" or "City") was not listed as a creditor. Nevertheless, it is undisputed that both TTLREO and Linden held secured claims against the Property at the time of sale. Tr. Br. at 4.

Prior to Debtor's bankruptcy petition, a New Jersey court entered a final judgment on August 22, 2017, finding that Debtor had no rights in the Property and that TTLREO was the owner of the Property. Pa at 12-14. TTLREO acquired its interest in the property by purchasing a Certificate of Sale for Unpaid Municipal Liens from its predecessor-in-interest, TTLBL, LLC, on April 11, 2017. *Id.* at 15-18. The predecessor-in-interest purchased Tax Sale Certificate No. 13-287 for $8,245.01, and also paid $26,200 for the Certificate of Sale. *Id.* at 15. On June 8, 2018, the City sold a second Tax Sale Certificate, No. 17-210, due to unpaid taxes and sewer and utility charges; the third-party purchaser of this certificate is not a party to this appeal. Linden Opp. at 7-8.

Because the Property was in TTLREO's name before the bankruptcy petition was filed, the Trustee had to sue TTLREO to bring the Property back into the estate before it could be sold. Pa

---

6, and its Appendix will be referred to as "L. App.," D.E. 6-1. TTLREO's opposition brief "TTLREO Opp.," D.E. 7. The Trustee's Reply Brief will be referred to as "Tr. Reply," D.E. 10, and his Supplemental Appendix will be referred to as "Pra," D.E. 10-1.

at 84. The Trustee then sold the Property for $222,500 on June 3, 2019. Pa at 34, 37. Pursuant to the sale contract, the Trustee received a $22,000 deposit from the buyers, which was held in his attorney trust account. *Id.* at 54. After the sale contract was executed but before the closing, the parties learned that the Property was polluted by fuel oil, requiring remediation to comply with the New Jersey Department of Environmental Protection ("NJDEP") standards. *Id.* at 51-53. The Trustee contracted with Mike Waters to remove an underground storage tank, and with Aubrey Cameron, a New Jersey-certified subsurface evaluator, to remediate the Property. *Id.* The Trustee also paid a fee to the NJDEP to obtain a "no further action" letter, which allowed the parties to close title. Tr. Br. at 3. The direct costs associated with the cleanup totaled $34,780.60. *Id.* at 35, 38.

The timing of the foregoing events was not clear from the briefing, so the Court carefully reviewed the record. On May 11, 2018, the Trustee made a motion to the bankruptcy court to sell the Property. L. App. at Ex. 1. In the motion, the Trustee noted that the bankruptcy court had previously approved the retention of a real estate broker and a real estate appraiser. *Id.* On April 19, 2018, the Trustee entered into the contract to sell the Property. *Id.* On April 27, 2018, the buyers' attorney notified the Trustee that an underground oil tank had to be removed before closing, and the Trustee obtained an estimate from Mike Waters for $1,800 to remove the oil tank (with the potential for an additional $550 if the tank was bigger). *Id.* The Trustee asked that the bankruptcy judge permit the sale. *Id.*

Noticeably absent from the motion to sell the Property was the fact that the Trustee's counsel had already spent significant time on the transaction according to his time records. Pa 42-43. According to counsel's time records, there were already twenty-seven entries from November 14, 2017 through May 10, 2018. *Id.* In other words, it was clear to the Trustee when he filed the

3

motion that he would be seeking substantial counsel fees in connection with the Property's sale, but this information was not provided to Judge Sherwood. These fees are part of the surcharge request at issue on appeal.

On June 13, 2018, Judge Sherwood entered an order permitting the sale of the Property. *Id.* at Ex. 3. The order stated that the Trustee was authorized to pay Waters to remove the oil tank, to pay the broker's commission, and to pay the Debtor's exemption at the time of the closing. *Id.*

In addition, the Trustee produced an estimate from Mike Walters dated July 24, 2018, which reflects that the oil tank removal cost was expected to be $8,090. Pra 78. Although this amount was over four times higher than the Trustee represented in his motion to sell the Property, it does not appear that the Trustee notified the bankruptcy court of this increase.

Before the closing on the Property, the Trustee made a motion on February 12, 2019 for a surcharge pursuant to 11 U.S.C. § 506(c). L. App. at Ex. 4. The Trustee indicated that he had received an estimate from Waters for $8,090 but that on October 5, 2018, Waters submitted a final bill for $31,480. *Id.* The Trustee had not received notice of the extra cost and had already paid Waters a deposit of $4,000 from the buyers' $22,000 deposit on the Property. *Id.* The Trustee considered Waters' actions to be "outrageous." *Id.* At the same time, the Trustee did not indicate that he wanted to sue Waters' for breach of contract or a related cause of action. In fact, the motion does not indicate that the Trustee took any action vis-à-vis Waters as to the high bill. It certainly does not appear that the Trustee brought the issue to the Judge Sherwood's attention at the time. Instead, the Trustee accepted Waters' suggestion on September 27, 2018 to hire Cameron to take water samples on the Property. *Id.* Cameron cost an additional $2,900, and his report was forwarded to Waters, who in turn filed a Final Remedial Action Report with the State of New Jersey. *Id.* The final report was necessary to obtain the no further action letter from the State. *Id.*

As a result, the Trustee sought a surcharge under § 506(c) in the amount of $34,480 for Waters ($31,480) and Cameron ($2,900) along with "reasonable counsel fees and costs" incurred by the Trustee as to the clean-up of the Property. *Id.* Counsel fees and costs were estimated at $100,000 (which appeared to be a total of all fees, not just those related to work on the clean-up process), but no itemization was provided. *Id.* The bankruptcy court denied that motion without prejudice. Pa at 113.

At closing, on June 3, 2019, the consideration paid for the Property, including adjustments, totaled $223,508.91. Deductions totaling $169,602.43 were applied for the realtor commissions ($13,350.00); mediator's fee ($1,439.30); the Debtor's exemption ($15,315.00, which was adjusted from $20,675); oil tank cleanup ($24,555.60); City of Linden Tax Certificate No. 13-287 ($71,268.03); City of Linden Tax Certificate No. 17-210 ($26,915.07); and miscellaneous closing costs ($6.534.43). Pa 37-39. The $71,268.03 was paid to TTLREO. TTLREO Opp. at 3. The Trustee also claims that the $26,915.07 was paid to TTLREO but provides no evidence in support; it appears that that money was paid to another party who purchased a later tax lien. After these deductions, the net proceeds of the sale were $53,906.48.

The closing statement indicates that $24,555.60 was paid to "M. Waters Tanks & Boilers, LLC" for "Oil Tank Cleanup." Pa 38.[2] And the Trustee had previously paid Waters a deposit of $4,000. As noted, the Trustee seeks a surcharge in the amount of $31,480, which the Court guesses (because it was not explained by the Trustee) that Waters actually charged $35,480 for his work (or over four times his second estimate) in light of the $4,000 deposit. But Waters was also paid

---

[2] $2,000 was also taken from the debtor's exemption for "cleanup" although the entry does not indicate whether the cleanup concerned the oil tank. *Id.*

5

$24,555.60 at the closing. Thus, it appears that the surcharge amount sought by the Trustee as to Waters should be reduced by $24,555.60 (or it means that Waters actually charged $60,035).

On May 13, 2020, the Trustee filed a renewed motion[3] for the imposition of an § 506(c) surcharge upon Linden and TTLREO for pollution cleanup and related expenses of the Trustee acting as Trustee. Pa at 32-33. In total, the Trustee sought to surcharge $71,382.39 against Linden and TTLREO, consisting of 34,780.60 for Waters and Cameron, and the remainder in legal fees and disbursements. *Id.* at 36, 69.[4] The bankruptcy court held a hearing on the motion on January 7, 2020. *Id.* at 57-87. The Trustee argued that that without expending the cleanup costs and obtaining the "no further action" letter from the NJDEP, the Property could not have been sold. Therefore, the Trustee continued, TTLREO would have had to clean up the property to realize the money it expended in purchasing the tax sale certificate. *Id.* at 60. As for the City, the Trustee argued that it was directly benefited by the cleanup because "if remediation had not occurred contaminated groundwater would have spread to adjoining properties resulting in a clear and present health risk" to other Linden residents. *Id.* The Trustee added that the City further benefitted from the sale because it "received taxes and sewer charges at the closing and . . . the tax sale was redeemed." Pa 66.

With respect to a surcharge against Linden, the bankruptcy court stated that it was unable to find any precedent for a § 506(c) surcharge against a municipality, and the Trustee agreed that there was no precedent. *Id.* at 63-64. The court explained that a § 506(c) surcharge allows the trustee to recover its fees "from the property and maybe the proceeds of the sale of the property,"

---

[3] As noted, the Trustee previously sought §506(c) relief in a motion filed in February 2019 "under the docket of the adversary proceeding, 18-1025 (JKS) (docket no. 47). The bankruptcy court denied that motion without prejudice. Pa at 113; Linden Opp. at 10-11.

[4] The Trustee's certification listed the amount as $77,772.39, but at oral argument on the motion, counsel for the Trustee clarified that the correct amount was $71,382.39. *Id.* at 69.

6

but here, the City did not own the property – the property was owned by the debtor's estate. *Id.* at 65. As a result, the court found that the Trustee did not seek to recover from the property or its proceeds but rather to recover from the City. *Id.* The court denied the motion for a § 506(c) surcharge with respect to the City of Linden. *Id.* at 68.

As for applying a § 506(c) surcharge to TTLREO, the court explained that although the trustee's counsel fees for selling the property and dealing with the environmental issues should be compensated, these costs "should be compensated first from the unencumbered assets of the estate" which included the net proceeds of $53,906, "and if anyone should be surcharged, . . . at first it should be unsecured creditors." *Id.* at 79. The court continued that TTLREO and Linden had first liens on the Property and that the costs of disposition decreased the property's value. *Id.* at 81. The court explained that the property "wasn't worth very much more than their lien because of the cost of disposition" and that in "hindsight, it might have been in [the Trustee's] best interest just to abandon this property." *Id.* The court explained that it could not justify surcharging a secured creditor for disposition costs while unsecured creditors were getting paid in full and the debtor received her exemption. *Id.* at 81-82. Cleanup costs are administration expenses, the court reasoned, that have priority over payments to unsecured creditors and the Trustee's commission. *Id.* at 82. The court also noted that had TTLREO kept title to the Property, it would have had to pay the costs of remediation and its own attorney's fees and "would have walked away with a huge profit" that the Trustee had now taken away. *Id.* at 82-83.

The bankruptcy court reiterated that after the closing on the Property, there were net proceeds of $53,906. *Id.* Against those proceeds, there was a $9,000 claim for unsecured creditors, about $14,000 due to the Trustee for his commission, and about $36,000 in legal fees associated with the disposition of the property. *Id.* at 84-85. Except for the unsecured creditors' claims, the

court deemed all of these legitimate administrative claims but noted that the cleanup cost "was a lot more expensive than it should have been." *Id.* at 85. The court explained that the trustee had the discretion to either make a distribution to the unsecured creditors, or "declare this to be a no dividend case" because of the administrative costs. *Id.* The court indicated that a trustee's fees and commission are priority claims, and that money can only "flow down to the unsecureds" once these priority claims are satisfied. *Id.* The return of the Property from TTLREO back to the estate "was the right thing and appropriate under the law" but does not create the basis for a surcharge because TTLREO would have been better off if the property was not sold by the Trustee. *Id.* at 86.

On February 5, 2020, the Trustee filed a notice of motion for reconsideration of the bankruptcy court's denial of the motion for a § 506(c) surcharge. *Id.* at 90-91. The Trustee argued that TTLREO and Linden's collateral benefitted from the Trustee's efforts to remediate the Property, that the remediation expenses were necessary for TTLREO and Linden to realize their value in the Property, and that "[a]s it stands now, TTLREO and Linden are receiving a windfall." *Id.* at 93-96. At the same time, the Trustee agreed that TTLREO would have been better off without the remediation but called the issue "immaterial." *Id.* at 93, 96.

The Bankruptcy Court held a hearing on the motion for reconsideration on March 3, 2020. Pa at 128-130. The Court denied the motion and explained as follows:

> The thing I can't get pas[t] here is that unsecured creditors are being paid from the collateral of TTLREO and the City of Linden, they both had liens on the property. This isn't a case where there are other funds that are free funds that are available to pay those claims . . . the entirety of the estate is the proceeds of this house, which is subject to their lien . . . .
>
> So I don't see how I can make a 506(c) award from the proceeds of their collateral when part of the reason for you having to resort to 506(c) is the fact that . . . the Trustee took the proceeds of their

8

>collateral and paid the Debtor's exemption, paid unsecured creditors, you're going to pay the Trustee's commission, you're paying a lot of the admin claims. So that is one point that I didn't articulate well, maybe as well as I should have during the first hearing.
>
>But that to me is really the end of the story. And for that reason I'm inclined to deny your motion to reconsider.

*Id.* at 129-130.

The Trustee filed a notice of appeal of the bankruptcy court's orders denying the motion for a § 506(c) surcharge and the motion for reconsideration on March 19, 2020. D.E. 1.

## II. APPELLATE JURISDICTION

A district court has appellate jurisdiction over the final judgments, orders, and decrees of a bankruptcy court. 28 U.S.C. § 158(a)(1). When sitting as an appellate court reviewing a decision of the bankruptcy court, the district court "review[s] the bankruptcy court's legal determinations *de novo*, its factual findings for clear error and its exercise of discretion for abuse thereof." *In re Am. Pad & Paper Co.*, 478 F.3d 546, 551 (3d Cir. 2007) (quoting *In re United Healthcare Sys., Inc.*, 396 F.3d 247, 249 (3d Cir. 2005)). Thus, a bankruptcy court's "factual findings as to the necessary, reasonable, and benefit requirements of § 506(c)" are reviewed "under the clearly erroneous standard," and "the bankruptcy court's application of the correct legal standard contained in § 506(c)" is reviewed *de novo*. *In re Bryan*, 857 F.3d 1078, 1093-94 (10th Cir. 2017).

## III. ANALYSIS

The Trustee appeals from two orders entered by the bankruptcy court: (1) a January 22, 2020 order denying the Trustee's motion to surcharge TTLREO and Linden under 11 U.S.C. § 506(c); and (2) a March 6, 2020 order denying the Trustee's motion for reconsideration on the first order.

9

The Trustee argues that "the Bankruptcy Court erred as a matter of law by not imposing 11 U.S.C. § 506(c) surcharge" on TTLREO and Linden.  Tr. Br. at 7.  The Trustee asserts that TTLREO and Linden were benefitted from the expense of remediating the Property, which satisfies the requirements of § 506(c).  *Id.*  The bankruptcy court erred, the Trustee contends, by denying the motion on the grounds the "TTLREO would have been better off it this property was not sold by the trustee," because that is the incorrect test.  *Id.* at 8.

Generally, "fees and expenses are not chargeable against secured collateral." *In re Towne, Inc.*, 536 Fed. App'x 265, 268 (3d Cir. 2013).  However, § 506(c) provides that "[t]he trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim, including the payment of all ad valorem property taxes with respect to the property." Section 506(c) only allows a claimant to recover expenses from secured collateral "under 'sharply limited' circumstances." *In re Towne*, 536 Fed. App'x at 268 (quoting *In re Visual Indus., Inc.*, 57 F.3d 321, 325 (3d Cir. 1995)).  To recover expenses under this provision, "a claimant must demonstrate that (1) the expenditures are reasonable and necessary to the preservation or disposal of the property and (2) the expenditures provide a direct benefit to the secured creditors." *Id.* (quoting *In re C.S. Assocs.*, 29 F.3d 903, 906 (3d Cir. 1994)).  A leading bankruptcy authority explains the benefit requirement as follows:

> In general, a secured creditor receives a "benefit" within the meaning of section 506(c) if the relevant expense preserved or increased the value of its collateral.  The general concept underlying this requirement is the prevention of a windfall to the secured creditor; a secured creditor should not reap the benefit of actions taken to preserve the secured creditor's collateral without shouldering the cost.

10

4 COLLIER ON BANKRUPTCY ¶ 506.05 (16th ed. 2015); *see also id.* ¶ 506.05[6][c] ("[T]he facts of a particular case may justify charging the holder of a secured claim with certain expenses *if a clear benefit to the secured creditor can be demonstrated*." (emphasis added). Thus, the Trustee had the burden of establishing the benefit to secured creditors.

The Trustee argues that "[t]he bankruptcy court failed to articulate any substantive reason for denying the trustee's surcharge claim as to Linden." Tr. Br. at 7. The Court disagrees. At the closing of the Property, TTLREO received $71,268.03. The Trustee does not clearly indicate how much Linden received as a secured creditor (as opposed to costs, such as sewer service, that arose post-petition), but it appears from the closing statement that Linden received under $2,000 in total. Pa 37-38. Thus, against a maximum amount of $73,268.03, the Trustee sought to recover $71,382.79. The Trustee's actions can hardly be categorized as a benefit to Linden or TTLREO.

While TTLREO and Linden are not entitled to a windfall, they are also entitled to not being fleeced. TTLREO and Linden were the secured creditors, and surcharges under § 506(c) are permitted when they benefit the secured creditor. Here, in comparison, the Trustee wants surcharges to the detriment of the secured creditors to benefit Debtor (by way of the exemption), the unsecured creditors, and the Trustee. Judge Sherwood said the same, and Judge Sherwood was correct. The Trustee has not shown any clear benefit to TTLREO and Linden.

In fact, the Trustee agrees that TTLREO and Linden would have been in a better position if the Trustee had not funded the environmental remediation and instead abandoned the property. But the Trustee argues that this fact is immaterial and irrelevant. The Court disagrees. The secured creditors did not balk at other expenses related to the Property, such as the use of a realtor. However, the Trustee now seeks to recoup virtually all the money paid to the secured creditors in

favor of Debtor, the unsecured creditors, and the Trustee – with the unsecured creditors and the Trustee each being paid 100% of their claim/request.

For the foregoing reasons, the bankruptcy court is affirmed.

### IV. CONCLUSION

For the reasons set forth above, the bankruptcy court is affirmed. An appropriate Order accompanies this Opinion.

Date: March 5, 2021

_____<br>
John Michael Vazquez, U.S.D.J.